UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DAWN R. BROWN,                      )
                                    )
        Plaintiff,                 )
                                    )
    v.                              )   Civil Action No. 14-77 (RBW)
                                    )
DISTRICT OF COLUMBIA and            )
CATHY LANIER,                       )
                                    )
        Defendants.                )
_____ )

## MEMORANDUM OPINION

The plaintiff in this civil action, Dawn R. Brown, alleges that the defendants, the District of Columbia (the "District"), and Cathy Lanier, the former chief of the District's Metropolitan Police Department (the "MPD") during the relevant time period,[1] discriminated against her on the basis of her gender and retaliated against her, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to e-16 (2012), and of her constitutional rights under the Fifth Amendment to the United States Constitution, see generally Notice of Removal, Exhibit ("Ex.") 1 (Complaint for Monetary Damages) ("Compl.") ¶¶ 26–34.  Currently pending before the Court is the Defendants' Motion for Judgment on the Pleadings and Motion [for] Summary Judgment ("Defs.' Mot.").  See Defs.' Mot. at 1.  Upon consideration of the parties' submissions,[2] the Court concludes that it must grant in part and deny in part the defendants' motion.

---

[1] The plaintiff seeks injunctive relief against Lanier in Lanier's official capacity as the chief of the MPD, and damages against Lanier in her individual capacity.  See Compl. ¶ 3 (above "Nature of Action" heading).

[2] In addition to the documents already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Answer to Plaintiff['s] Complaint ("Answer"); (2) the Memorandum of Points and Authorities in Support of the Defendants' Motion for Judgment on the Pleadings and Motion for Summary

(continued . . .)

# I. BACKGROUND

The plaintiff "is a sworn law enforcement officer of the [MPD]," Compl. ¶ 1, who was "assigned to the [MPD's] Central Cell Block" (the "Cell Block") at all times relevant to this case, id. ¶ 7. The plaintiff and a civilian supervisor, Jermaine Fox, "both worked the evening tour" on August 3, 2011. Id. ¶¶ 13–15. The defendants do not dispute that Fox was the watch commander during the evening tour on August 3, 2011. See Pl.'s Rev. Facts ¶ 3; Defs.' Resp. to Pl.'s Rev. Facts ¶ 3. "The [w]atch [c]ommander's desk is in the front office where the security cameras are located and remote surveillance of prisoners is available." Compl. ¶ 16; Answer ¶ 16. At approximately 8:00 p.m., "it was [discovered], during a routine cell check . . . , that a prisoner had escaped from his cell and from [the Cell Block]." Defs.' Facts ¶ 8.

An investigation revealed that "the escape occurred between the hours of [6:05 p.m.] and [7:25 p.m.] hours." Pl.'s Opp'n, Exhibit ("Ex.") 1 (Final Investigative Report ("Report")) at 11. The prisoner utilized unlocked "utility doors that [led] to the crawl space behind the cells," an "unsecured plumbing closet [containing] a ladder," and "an unsecured metal door that led to the female's locker room." Id., Ex. 1 (Report) at 12. The final investigative report, which was prepared by the plaintiff's superior officer, Captain Edward Delgado, concluded that both the plaintiff and Fox "failed to ensure that the physical security of the facility was not compromised," and recommended each of them for disciplinary action. Id., Ex. 1 (Report) at 12.

Fox was notified of a proposed ten-day suspension on November 29, 2011, but a subsequent final decision dismissed the allegations of misconduct against him. See Defs.' Mot.,

---

( . . . continued)
Judgment ("Defs.' Mem."); (3) the defendants' Statement of Material Facts Not in Genuine Dispute ("Defs.' Facts"); (4) the Plaintiff's Memorandum of Law in Support of Her Opposition to Summary Judgment ("Pl.'s Opp'n."); (5) the Revised Plaintiff's Concise Statement of Genuine Issues of Material Facts ("Pl.'s Rev. Facts"); (6) the Defendants' Response to Plaintiff's Revised Concise Statement of Genuine Issues of Material Facts ("Defs.' Resp. to Pl.'s Rev. Facts"); and (7) the Defendants' Reply Brief ("Defs.' Reply").

Ex. 5 (Notice to Jermaine Fox). The plaintiff was also notified of a proposed ten-day suspension on November 30, 2011, id., Ex. 6 (Nov. 2011 Notice to Sergeant Dawn Brown), and three months later, a final decision was issued suspending her without pay for ten days but holding five of those days in abeyance for one year, see id., Ex. 7 (Feb. 2012 Notice to Sergeant Dawn Brown). Appeals of suspension recommendations for MPD officers, such as the plaintiff, as opposed to civilian employees, such as Fox, are processed through different channels. Defs.' Facts ¶ 14; see also Defs.' Mot., Ex. 10 (Feb. 17, 2012 Letter from Sergeant Dawn Brown to Chief Cathy Lanier) at 3 ("Unfortunately because I am a sworn member of the department and the routing of my appeal is slightly different than Mr. Fox, I have not been afforded the same fairness as Mr. Fox . . . .").

On March 9, 2012, defendant Lanier denied the plaintiff's appeal of the suspension decision, stating that "[a] review of the [Patrol Service Signal] book reveals that [the plaintiff was], in fact, the watch commander on the night in question, and did not ensure that adequate safeguards were in place to prevent the prisoner's escape." Defs.' Mot., Ex. 11 (Mar. 9, 2012 Letter from Chief Cathy Lanier to Sergeant Dawn Brown) at 1. Lanier did, however, "reduce the suspension from ten to five days, all of which [were] to be held in abeyance for one year," after considering "the mitigating information contained in [the plaintiff's] appeal . . . ." Id. The plaintiff filed this lawsuit after pursuing her discrimination and retaliation claims before the Equal Employment Opportunity Commission. See Compl. ¶¶ 5–6.

## II. STANDARDS OF REVIEW

### A. Rule 12(c) Motions

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

P. 12(c). "[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) . . . is essentially the same as that for motions to dismiss under Rule 12(b)(6)." Jung v. Ass'n of Am. Med. Colls., 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004). To survive a motion to dismiss under Rule 12(b)(6), the allegations in the complaint must state a facially plausible claim for recovery. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court, which is required to assume that all well-pleaded allegations in the complaint are true, must find that the complaint is sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 570)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Legal conclusions masquerading as factual allegations are not enough to survive a motion to dismiss. See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). When resolving a Rule 12(c) motion, "the court must not rely on facts outside of the pleadings, must construe the complaint in a light most favorable to the plaintiff, and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." Maniaci v. Georgetown Univ., 510 F. Supp. 2d 50, 59 (D.D.C. 2007).

**B.     Rule 56 Motions**

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. (citation omitted). The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but rather "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

5

## III. ANALYSIS

### A. The Plaintiffs' Title VII Discrimination Claims

#### 1. Gender Discrimination Claim

Because of the extrinsic evidence submitted in support of the plaintiff's discrimination claims, the Court will review these claims based on the defendants' motion for summary judgment. In the absence of direct evidence of discrimination, when ruling on a summary judgment motion, the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies in assessing the plaintiff's discrimination claims. Accordingly, the plaintiff must "make[] out a prima facie case of disparate-treatment discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (quoting George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005)). Once this prima facie case of discrimination is established, the defendant must identify a legitimate, nondiscriminatory reason for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802. However, where the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, this Circuit has held that "the McDonnell Douglas inquiry distills into one question: [whether] the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee." Evans v. Sebelius, 716 F.3d 617, 620 (D.C. Cir. 2013) (quoting Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (internal quotation marks omitted). Thus, "the prima-facie-case aspect of McDonnell Douglas is irrelevant when an employer has asserted a legitimate, nondiscriminatory reason for its decision." Adeyemi v.

District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008). And, "[c]onsistent with the courts' reluctance to become involved in the micromanagement of everyday employment decisions, the question before the [C]ourt is limited to whether [the plaintiff has] produced sufficient evidence of [] discrimination, not whether [s]he was treated fairly . . . ." Forman v. Small, 271 F.3d 285, 291 (D.C. Cir. 2001) (internal citations omitted).

The defendant argues that the plaintiff's suspension does not qualify as an "adverse employment action" because the discipline was held in abeyance. See Defs.' Mem. at 8–11. But this challenge goes to whether the plaintiff has established a prima facie case, which under this Circuit's approach, "is irrelevant when an employer has asserted a legitimate, nondiscriminatory reason for its decision." Adeyemi, 525 F.3d at 1226. Therefore, the threshold question for the Court to resolve is whether the defendants have stated a legitimate, nondiscriminatory reason for the plaintiff's suspension. At this stage in the analysis, the defendant's burden of stating a legitimate, nondiscriminatory reason for the adverse employment action is one of production; accordingly, the defendant "need not persuade the [C]ourt that [the adverse employment action] was actually motivated by the proffered reasons." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) (emphasis added). Here, the defendants point to the fact that both the plaintiff and Fox were recommended for adverse action as a penalty for their culpability for the prisoner escape. See Defs.' Mem. at 10 (stating that both the plaintiff and Fox were recommended for the same adverse action); see also Pl.'s Opp'n, Ex. 1 (Report) at 12 ("Upon a careful review of all facts and circumstances presented within this investigative report[,] I find that Sergeant Dawn Brown and Supervisor Jermaine Fox failed to ensure that the physical security of the facility was not compromised. . . . [T]heir failure to adequately secure all utility

7

doors was what contributed to this escape."). The defendants have therefore stated a legitimate, nondiscriminatory reason for the plaintiff's suspension.

The Court now turns its analysis to whether the plaintiff has proffered sufficient evidence for a reasonable jury to find that the defendants' stated reason for the adverse employment action was pretextual. See Evans, 716 F.3d at 620. The plaintiff argues that the defendants' proffered reason for her discipline—her failure to properly perform her duties as watch commander when the prisoner escape occurred—should be given no credence because she was not actually the watch commander on the evening of the escape, and therefore, the reason given for her discipline is pretext for discrimination. See Pl.'s Opp'n at 27–30; see also Pl.'s Rev. Facts ¶ 2 ("The [p]laintiff was not the Watch Commander at the time of the prisoner escape."); Defs.' Resp. to Pl's Rev. Facts at 4 ("For purposes of this motion only, the [d]efendants do not dispute this statement."). The defendant argues that her misidentification as the on-duty watch commander in the official investigation report is immaterial because Fox was also recommended for adverse action. See Defs.' Resp. to Pl.'s Rev. Facts at 4 (stating that the plaintiff's misidentification as watch commander "simply does not create a material factual dispute since discipline was recommended against Fox"); see also Defs.' Facts ¶ 10 ("Delgado determined that both [the p]laintiff and [] Fox were equally responsible and negligent in performing their duties, and recommended that each be disciplined."); Pl.'s Opp'n, Ex. 1 (Report) at 13, 14 (recommending that both the plaintiff and Fox be "cited . . . for Adverse Action [for] . . . neglect[ing] to ensure the physical security of the Central Cell Block was not compromised."). The defendants therefore contend that the plaintiff's misidentification in Delgado's report as the on-duty watch commander is immaterial to her claim of gender discrimination. See Defs.' Reply at 7.

The Court disagrees with the defendants' position, because a genuine issue of material fact exists as to what discipline the plaintiff would have received, if any, had she not been misidentified as the watch commander on the night of the prisoner's escape. The record also contains evidence that William Smith, a male civilian supervisor with a rank equal to sergeant, see Pl.'s Opp'n, Ex. 23 (Deposition of Jermaine Fox ("Fox Dep.")) at 5:17–6:1 (stating that the "supervisor" designation is the civilian equivalent to the "sworn sergeant" position); see also Pl.'s Opp'n, Ex. 26 (Deposition of Michael Eldridge ("Eldridge Dep.")) at 21:2–11 (A "[c]ivil service Sergeant assigned to [the] CCB [Central Cell Block] would have the same authority as a civilian supervisor assigned to [the] CCB."), knew about the unsecured access door prior to the prisoner's escape, see Pl.'s Opp'n, Ex. 1 (Report), Attach. 12 (Statement of Lieutenant Ronald A. Netter) ("The undersigned when touring the facility sometime in July with Captain Delgado and Supervisor Smith, it was discovered that a top vent door was ajar[].");  see also id., Ex. 1 (Report), Attach. 13 (Statement of William A. Smith) ("About one and a half to two months ago I noticed that the access to . . . the female locker[]room was open."), and yet he was not disciplined for the escape, see id., Ex. 1 (Report), at 12–14 (listing the individuals recommended for discipline in connection with the prisoner escape). However, the plaintiff's affidavit states that she had no knowledge of the unsecured access door, see Pl.'s Opp'n, Ex. 6 (Affidavit [of] Dawn R. Brown, Plaintiff ("Brown Aff.")) ¶¶ 15–16 (stating that the plaintiff did know that the access door was unsecured prior to the prisoner's escape), but that she was disciplined. The Court finds this evidence regarding the disparate treatment of Fox and Smith sufficient to raise a genuine issue of material fact as to whether the plaintiff was disciplined due to her role in the prisoner escape, or due to her gender, while similarly situated male employees were not similarly disciplined. And whether Fox, Smith, or others were similarly situated to the plaintiff is a

9

question properly left for a jury's determination, and not for the Court on a motion for summary judgment. See Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1115 (D.C. Cir. 2016) ("[W]hether two employees are similarly situated is ordinarily a question of fact for the jury . . . ."); see also id. ("A plaintiff may support an inference that her employer's stated reasons for undertaking the adverse employment action in question were pretext by citing a number of possible sources of evidence, including 'the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, [ ] the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive.'" (quoting Walker v. Johnson, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (alteration in original)). Count I of the complaint therefore survives the defendants' summary judgment motion.

### 2. Retaliation

The plaintiff also alleges that her March 9, 2012 suspension "was retaliation against [her] for alleging and aggressively prosecuting her discrimination claim" against one of her supervisors, non-party Lieutenant Burley Sanders, in a separate action before another member of this Court. Compl. ¶¶ 31, 33; see also Pl.'s Rev. Facts ¶¶ 27–29. "To prove retaliation, the plaintiff generally must establish that . . . she suffered (i) a materially adverse action (ii) because . . . she had brought or threatened to bring a discrimination claim." Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008). Retaliation claims are also governed by the burden-shifting framework adopted in McDonnell-Douglas. See Jones v. Bernanke, 557 F.3d 670, 674 (D.C. Cir. 2009) (citing Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)). As noted earlier, "[u]nder that framework, a plaintiff must establish a prima facie

case of retaliation by showing (1) that [s]he engaged in a statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two." Id. at 677 (citing Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007) (emphasis added)). However, just like a discrimination claim, once an employer produces a legitimate, nondiscriminatory reason for the adverse action, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer intentional . . . retaliation from all the evidence." Carter, 387 F.3d at 878.

The Court has already concluded that the defendants' stated reason for the plaintiff's suspension, i.e., her perceived role in the prisoner's escape, qualifies as a legitimate, nondiscriminatory reason for the adverse action. Therefore, similar to the preceding analysis of the plaintiff's gender discrimination claim, the Court must determine whether a reasonable jury could infer intentional retaliation from the record. The plaintiff relies primarily on the assertion that Delgado "knew that [she] had a pending claim against his colleague and friend, . . . Sanders, for sexual harassment at the time of his investigation of the prisoner escape," Pl.'s Rev. Facts ¶ 27, and similarly, that Lanier knew about the pending claim "against her colleague and friend" Sanders "at the time [Lanier] concurred in the results and recommendations of Delgado's investigation of the prisoner escape," id. ¶ 29. As support for these claims, the plaintiff cites the affidavit she filed in this case, which states the following:

> In 2010, I filed a lawsuit against the District . . . for sexual harassment and other unlawful conduct committed against me by . . . Sanders. My case was pending in the U.S. District Court for the District of Columbia . . . until it was resolved by agreement in December 2012. . . . [] Sanders was a friend of [] Lanier. I named [] Lanier as a witness in my case. I had a strong case because I was physically assaulted by [] Sanders who bruised me in the course of one of his assaults and who was found guilty for it on August 23, 2010, in [the] Superior Court [of the District of Columbia]. [] Lanier had prior knowledge of [] Sanders sexually harassing other women subordinates and knowledge that [] Sanders was found guilty of assaulting me because she terminated his employment after he was found guilty of assaulting

11

> me. [] Delgado had knowledge that I had accused [] Sanders of assault and sexual harassment. The two of them were friendly, the guilty finding against [] Sanders was widely known within MPD, particularly by officials, and [] Delgado was [] Sanders' supervisor.

Pl.'s Opp'n, Ex. 6 (Brown Aff.) ¶ 34. From this statement, the plaintiff appears to argue that the Court can infer Delgado's and Lanier's states of mind when they took the allegedly retaliatory actions against her. See Pl.'s Rev. Facts ¶¶ 27, 29 (citing as further support footnote three of the plaintiff's revised statement of facts).[3]

The plaintiff's threadbare statement about what Delgado, Eldridge, and Lanier knew regarding her allegations against Sanders, see Pl.'s Rev. Facts ¶¶ 27–29, are not sufficient to raise a genuine issue of material fact for trial, Anderson, 477 U.S. at 248 (on summary judgment, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." (second omission in original) (citation and internal quotation marks omitted)). Her statement is unsupported by any documentary or testimonial evidence. See generally Pl.'s Opp'n, Ex. 6 (Brown Aff.). Her statement that Delgado and Lanier were "friendly" or "friends" with Sanders is conclusory and hardly establishes that they were motivated to take retaliatory action against her—indeed, the statement utterly fails to show the degree of affinity shared between them and is purely speculative. It is also illogical for Lanier to have been motivated to retaliate against the plaintiff for complaining about Sanders when the plaintiff states that Lanier "terminated [Sanders'] employment after he was found guilty of assaulting [her]." Id., Ex. 6 (Brown Aff.) ¶ 34. Moreover, the lapse of time between the lawsuit the plaintiff initiated in 2010, the August 2011 escape, and the ultimate imposition of her suspension in March 2012, militates against finding

---

[3] The plaintiff makes similar assertions regarding Michael Eldridge, stating that he "knew that the [p]laintiff had a pending claim against his colleague," but omitting the assertion that Eldridge and Sanders were "friends." See Pl.'s Rev. Facts ¶ 28.

the existence of a genuine issue of fact regarding whether the plaintiff's complaints against Sanders caused the allegedly retaliatory acts taken against her. See Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) ("Temporal proximity can indeed support an inference of causation, but only where the two events are very close in time." (emphasis added) (citations omitted)); see also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam) (approving circuit court decisions finding that three or four month lapses are too temporally remote to establish causation). The Court will therefore grant the defendant's motion for summary judgment as to Count 2 of the complaint.

### B. The Plaintiff's § 1983 Claims Against Lanier

Although the plaintiff failed to respond to the defendants' arguments in support of dismissal of her claims against Lanier, see generally Pl.'s Opp'n, the Court will nonetheless analyze these claims pursuant to the District of Columbia Circuit's directive that, even though arguments may be deemed as conceded where a non-moving party fails to address them in an opposing brief, "when faced with a 12(b)(6) motion, the district court must answer the 'single question' [of] whether the complaint 'includes enough facts to state a claim to relief that is plausible on its face.'" Cohen v. Bd. of Trs., 819 F.3d 476, 481 (D.C. Cir. 2016) (quoting Mediacom Se. LLC v. BellSouth Telecomms., Inc., 672 F.3d 396, 399 (6th Cir. 2012)).[4]

#### 1. The Plaintiff's Claim Against Lanier in her Individual Capacity

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." Jackson v. District of Columbia, 949 F. Supp. 2d 257, 260 (D.D.C. 2013). Count 3 of the complaint alleges that "[t]he adverse action taken against the [p]laintiff by Defendant Lanier" violated § 1983 by "depriv[ing] the [p]laintiff

---

[4] As noted earlier, supra Part II.A, the same standard of review applicable to Rule 12(b)(6) motions applies to motions for judgment on the pleadings under Rule 12(c).

13

[of] her substantive due process rights . . . and equal protection [rights] . . . guaranteed by the Fifth Amendment"  Compl. ¶ 35.  The defendant argues Lanier is entitled to qualified immunity for taking disciplinary action against the plaintiff, see Defs.' Mem. at 16–18, and the Court agrees.

"The doctrine of qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "An official enjoys protection from a lawsuit where [her] conduct is objectively reasonable in light of existing law. Conversely, an [official] is not shielded where [she] could be expected to know that certain conduct would violate statutory or constitutional rights."  Mpoy v. Fenty, 901 F. Supp. 2d 144, 158 (quoting Brown v. Fogle, 819 F. Supp. 2d 23, 28–29 (D.D.C. 2011)).  "To determine whether an official is entitled to qualified immunity, the Court must consider whether the facts, viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right and, if so, whether that right was clearly established at the time of the alleged violation."  Mpoy, 901 F. Supp. 2d at 157.  A court has the discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  Pearson, 555 U.S. at 236.  And "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  Id. at 231 (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Here, the Court concludes that Lanier's conduct is not objectively unreasonable, even though it was based on the alleged erroneous identification of the plaintiff's role in the prisoner's

14

escape. According to the plaintiff, Lanier "impos[ed] a suspension on the [p]laintiff's employment record," which was "held in abeyance for one year." Compl. ¶ 4. Lanier allegedly took this action after a prisoner escaped from the Central Cell Block during a period when the plaintiff contends that she was erroneously identified as the on-duty watch commander, see id. ¶¶ 18, 23, who "has the responsibility over all prisoners within the [Central Cell Block] during his tour of duty," id. ¶ 11. Notable is the absence from the Complaint of any allegation that Lanier knew about or directed the alleged misidentification of the plaintiff as the watch commander, see generally id., which, if asserted, would lend support to the position that Lanier knew that her disciplinary action would violate the plaintiff's statutory or constitutional rights. Without such an allegation, the Court finds that what the plaintiff has asserted in her Complaint is insufficient to defeat Lanier's argument that she is entitled to qualified immunity regarding the imposition of the plaintiff's suspension, and Lanier's motion to dismiss Count 3 of the Complaint must therefore be granted pursuant to Rule 12(c).

### 2. The Plaintiff's Claim Against Lanier in Her Official Capacity

Count 4 of the complaint alleges that Lanier's disciplinary action against the plaintiff, taken by Lanier in her official capacity, "represents the official custom, practice[,] or policy of [the] MPD and the District." Id. ¶ 40. "Section 1983 creates a private cause of action against a 'person' who violates an individual's constitutional rights while acting 'under color of any statute, ordinance, regulation, custom, or usage, of . . . the District . . . .'" Brown v. Wilhelm, 819 F. Supp. 2d 41, 43 (D.D.C. 2011) (quoting 42 U.S.C. § 1983). Because "[s]uch claims are cognizable against the individual in his or her personal capacity only," id., the Court construes Count 4 as a claim for municipal liability against the District, see Alma v. Bowser, 159 F. Supp. 3d 1, 2 (D.D.C. 2016) (It is a "well-established principle that a suit against a public officer in her

15

official capacity 'is not a suit against the official but rather is a suit against the official's office.'" (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989))). In Monell v. New York City Department of Social Services, the Supreme Court held that municipalities and other local government entities were included amongst those persons to whom § 1983 applies. 436 U.S. 658, 690 (1978). But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 463 U.S. at 691. "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Id.

The defendant argues that this claim must be dismissed for failure to allege sufficient facts to establish municipal liability. See Defs.' Mem. at 14. "[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry." Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003). "First, the court must determine whether the complaint states a claim for a predicate constitutional violation. Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." Id. (citations omitted). And, "[t]hat policy or custom must itself be the moving force behind the alleged constitutional violation." Faison v. District of Columbia, 907 F. Supp. 2d 82, 84 (D.D.C. 2012).

Here, the complaint states that Lanier's disciplinary actions deprived the plaintiff of her substantive due process and equal protection rights under the Fifth Amendment. See Compl. ¶ 35; see also id. at 12 (incorporating all preceding allegations into Count 4). Even assuming for the sake of argument that the disciplinary action taken against the plaintiff violated her Fifth Amendment rights, the Court finds that the complaint fails to plausibly allege that a custom or

16

policy of the District was the "moving force behind" any such constitutional violation.  The complaint states merely the following:

> The unlawful discrimination against the [p]laintiff by Defendant Lanier, that is, choosing to punish only a female officer based on her sex while allowing senior male officers to escape culpability for the same conduct, represents the official custom, practice[,] or policy of [the] MPD and the District . . . by virtue of [Lanier]'s status as Chief of Police of the District . . . .

Compl. ¶ 40.  By its own language, the Complaint advances a respondeat superior theory of liability, i.e., that the District is liable "by virtue of [Lanier's] status as Chief of Police," id., which the Supreme Court expressly forbids in its municipal liability jurisprudence, see Monell, 436 U.S. at 691 ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.  In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.")  Because the complaint contains no allegation, as it must, of an "'affirmative link' between [a District] policy and the injury," Faison, 907 F. Supp. 2d at 85, the Court must grant the defendants' motion to dismiss Count 4 pursuant to Rule 12(c).

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the defendants' Rule 12(c) motion with respect to Counts 3 (the § 1983 claim against Lanier in her individual capacity) and 4 (the § 1983 claim against Lanier in her official capacity) of the complaint, grant their Rule 56 motion with respect to Count 2 (the retaliation claim), and deny their Rule 56 motion with respect to Count 1 (the gender discrimination claim).[5]

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

**SO ORDERED** this 19th day of April, 2017.

                                                                  REGGIE B. WALTON
                                                                  United States District Judge